**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0196-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TRAMAIN L. WILLIAMS,
a/k/a TRAMAIN WILLIAMS,
and TREMAIN WILLIAMS,

    Defendant-Appellant.

_____

Submitted January 12, 2022 – Decided April 1, 2022

Before Judges Gilson and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Municipal Appeal No. 6259.

Galantucci & Patuto, attorneys for appellant (S. Emile Lisboa, IV, of counsel and on the brief).

Daniel A. William, Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Tramain Williams pled guilty to driving while intoxicated (DWI) on July 28, 2019, in violation of N.J.S.A. 39:4-50. He was sentenced in accordance with the version of the DWI statute that was in effect on July 28, 2019. Because it was defendant's second DWI conviction, his sentence included a mandatory two-year suspension of his driver's license.

Defendant appeals from his sentence, arguing that he should have been sentenced under amendments to N.J.S.A. 39:4-50 that became effective on December 1, 2019, shortly before he was sentenced. He contends that his two-year license suspension should be shorter as permitted under the 2019 amendments. We hold that the amendments do not apply retroactively and affirm defendant's sentence.

## I.

In the early morning of July 28, 2019, the vehicle defendant was driving was stopped when a police officer observed that the vehicle's headlights were off, and the vehicle was swerving. When the officer went to speak with defendant, she smelled alcohol and had defendant perform several field sobriety tests. The officer then transported defendant to the police station, where he submitted to a breath alcohol test that disclosed defendant had a blood alcohol content of 0.15%.

A-0196-20

Defendant was charged with DWI and several other driving violations. On January 16, 2020, defendant pled guilty in municipal court to DWI and to obstruction of traffic, N.J.S.A. 39:4-67.

On the DWI conviction, the municipal court sentenced defendant as a second offender to a two-year license suspension with the requirement that defendant install an ignition interlock device on his vehicle for two years during the suspension and one year thereafter. Defendant was also sentenced to community service, jail time, and payments of various fines and penalties. On the obstruction of traffic conviction, the municipal court ordered defendant to pay fines and court costs.

Defendant informed the municipal court that he intended to seek a de novo review and the court granted him a stay of the license suspension. Thereafter, defendant filed for a de novo review by the Law Division.

In the Law Division, defendant challenged only his DWI sentence and argued that he was entitled to pipeline retroactivity of the 2019 amendments to the DWI statute. In that regard, he argued that he was not subject to a mandatory two-year suspension of his driver's license but could be considered for a suspension between one and two years. On August 28, 2020, the Law Division issued an order and written opinion rejecting defendant's retroactivity argument.

Thereafter, on September 16, 2020, the Law Division sentenced defendant to the same DWI sentence that he had received in the municipal court with minimal changes in penalty and fine amounts. Accordingly, defendant's sentence still imposed the two-year license suspension and ignition interlock requirement. Defendant requested a stay of his license suspension, but the Law Division denied that request in an order dated September 16, 2020.

The Law Division did not enter a separate order or judgment of conviction concerning the DWI sentence. Instead, that sentence is set forth in the transcript of defendant's sentencing, which took place on September 16, 2020. Defendant now appeals from the August 28, 2020 order entered by the Law Division that rejected his argument for the pipeline retroactive application of the 2019 amendments to the DWI statute.

## II.

On this appeal, defendant only challenges his DWI sentence and makes one argument:

> THE DECEMBER 1, 2019 AMENDMENTS TO THE DRIVING WHILE INTOXICATED STATUTE SHOULD BE AFFORDED PIPELINE RETROACTIVITY.

The question of whether a law applies retroactively "is a purely legal question of statutory interpretation" based on legislative intent. State v. J.V.,

242 N.J. 432, 442 (2020) (quoting Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016)). "To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning." Ibid. (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). If the language of the statute clearly reflects the Legislature's intent, then courts apply the law as written, affording the terms their plain meaning. Id. at 443. "If, however, the statutory text is ambiguous," courts may "resort to 'extrinsic interpretative aids, including legislative history,' to determine the statute's meaning." Ibid. (quoting State v. S.B., 230 N.J. 62, 68 (2017)).

The law generally favors prospective application of new legislation. James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 563 (2014). To determine if a statute should be applied retroactively, courts use a two-part test: (1) whether the Legislature intended to give the statute retroactive application; and (2) whether retroactive application "will result in either an unconstitutional interference with vested rights or a manifest injustice." Ibid. (quoting In re D.C., 146 N.J. 31, 50 (1996)). Under the first prong of that test, there are three circumstances that will justify the retroactive application of a statute:

> (1) the Legislature provided for retroactivity expressly, either in the language of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to "make the statute workable or to

give it the most sensible interpretation"; (2) "the statute is ameliorative or curative"; or (3) the parties' expectations warrant retroactive application.

[J.V., 242 N.J. at 444 (quoting Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981)).]

An ameliorative statute "refers only to criminal laws that effect a reduction in a criminal penalty." Perry v. N.J. State Parole Bd., 459 N.J. Super. 186, 196 (App. Div. 2019) (quoting State v. Universal Mar., 300 N.J. Super. 578, 582 (App. Div. 1997)). To be afforded retroactive application, an ameliorative statute "must be aimed at mitigating a legislatively perceived undue severity in the existing criminal law." State in the Interest of J.F., 446 N.J. Super. 39, 55 (App. Div. 2016) (quoting Kendall v. Snedeker, 219 N.J. Super. 283, 286 n.1 (App. Div. 1987)).

A curative change to a statute is limited to actions that "remedy a perceived imperfection in or misapplication of" the statute. Pisack v. B & C Towing, Inc., 240 N.J. 360, 371 (2020) (quoting James, 216 N.J. at 564). A curative change does not "alter the act in any substantial way, but merely clarifie[s] the legislative intent behind the [previous] act." Ibid. (alterations in original) (quoting James, 216 N.J. at 564).

On August 23, 2019, the Legislature passed, and the Governor signed into law, amendments to certain drunk driving offenses. See L. 2019, c. 248. Among

6

other things, the amendments expanded the use of ignition interlock devices and reduced the duration of license forfeitures. Ibid. Accordingly, the penalties for second offenders of DWI were amended so that forfeiture of the right to operate a motor vehicle is "for a period of not less than one year or more than two years upon conviction." See id. at § 2. That amendment replaced the mandatory two-year period of forfeiture for second offenders. Compare L. 2014, c. 54, § 2 (requiring two-year period of forfeiture) with L. 2019, c. 248, § 2 (allowing one to two years of forfeiture); see also N.J.S.A. 39:4-50(a)(2).

The amendment also expanded the use of ignition interlock devices. See L. 2019, c. 248, § 4. In that regard, the amendment required the device to remain installed for "not less than two years or more than four years," beyond the installation during the period of license forfeiture. Ibid. That amendment increased the statutory minimum for use of an ignition interlock device for second offenders after the period of license forfeiture from one year to two years. Compare L. 2009, c. 201, § 2 (requiring use of ignition interlock device for at least one year) with L. 2019, c. 248, § 4 (mandating use of ignition interlock device for at least two years); see also N.J.S.A. 39:4-50.17(b). The amendment also increased the statutory maximum for the use of an ignition interlock device for second offenders after the period of license forfeiture from

three to four years.  Compare L. 2009, c. 201, § 2 (permitting use of ignition interlock device for up to three years) with L. 2019, c. 248, § 4 (allowing use of ignition interlock device for up to four years); see also N.J.S.A. 39:4-50.17(b).

Most significantly for this appeal, all the 2019 amendments to the DWI statute were to "take effect on the first day of the fourth month after enactment and shall apply to any offense occurring on or after that date."  L. 2019, c. 248, § 7.  This statement by the Legislature "unequivocally" expresses an intent to apply the new statute prospectively.  State v. Scudieri, 469 N.J. Super. 507, 520 (App. Div. 2021).  Consequently, since the 2019 amendments were signed into law in August 2019, they became effective on December 1, 2019.  In short, the plain language of the 2019 amendments expresses the Legislature's intent to apply the amendment prospectively.  Scudieri, 469 N.J. Super. at 520.  That ends the inquiry.

Nevertheless, because the Legislature amended the DWI statute to effectuate its determination that interlock devices serve as a greater deterrent to drunk driving than a period of license forfeiture, any ameliorative or curative nature of the amendments do not warrant retroactive application.  Scudieri, 469 N.J. Super. at 515-16; see also Administrative Directive #25-19 (Dec. 4, 2019) https://www.njcourts.gov/notices/2019/n191206a.pdf (explaining that "the new

sentencing provisions apply only to defendants charged with a DWI or refusal on or after December 1, 2019"); State v. Morales, 390 N.J. Super. 470, 472 (App. Div. 2007) (explaining a directive issued by the Administrative Office of the Courts is "unquestionably binding on all trial courts").

Despite the clear language of the Legislature, defendant argues that the 2019 amendments shifted the focus from license suspension to ignition interlock devices. He, therefore, argues that the statute is ameliorative and should be given pipeline retroactivity. The short rebuttal to that argument is the clear language of the Legislature provides for prospective application and an examination of the focus on interlock devices not as ameliorative to penalties for DWI but rather as a recognition that the devices may be more effective. In that regard, the Legislature found that ignition interlock devices are more effective in deterring unlawful driving than license suspension because drunk drivers often drive with suspended licenses. See L. 2019, c. 248, §1(b).

Defendant also argues that the term "offense" used to explain the amendment's effective date is not defined in the statute. He then contends that an offense does not appear on a driver's abstract until it is adjudicated and, therefore, the offense refers to when defendant pled guilty or is convicted. We have already rejected this argument. See Scudieri, 469 N.J. Super. at 525-28.

In Scudieri, this court rejected a defendant's claim that the amendment to the refusal statute, which was part of the 2019 DWI amendments, should be applied retroactively. Id. at 520. In reaching that decision, the Scudieri court addressed the meaning of "offense." Id. at 525. The court rejected the concept that offense referred to the time of the conviction. Ibid. Instead, the Scudieri court held that a plain reading of the 2019 legislation leads to the reasonable interpretation that an "offense" is committed on the day of the motor vehicle violation. Id. at 526.

The Scudieri court's interpretation is also consistent with the plain and accepted meaning of offense. The term "offense" is defined in dictionaries as "a transgression of law" and "applies to the infraction of any law, rule, or code." Offense, Merriam-Webster, https://www.merriamwebster.com/ dictionary/ offense (last visited Mar. 23, 2022); see also Black's Law Dictionary 1300 (11th ed. 2019) (defining offense as "[a] violation of the law; a crime, often a minor one").

Accordingly, we hold that the 2019 amendments to the DWI statute do not apply retroactively. The amendments only apply to offenses that occur on or after December 1, 2019. Defendant's DWI sentence was correct and included the mandatory two-year license suspension for a second offense.

A-0196-20

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0196-20